Foglia et ux., Appellants, *v.* Pittsburgh
Transportation Co.

Argued April 29, 1935.

Before KEL-
LER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER,
JAMES and RHODES, JJ.

*Waldo P. Breeden,* for appellants.

*J. Roy Dickie,* of *Dickie, Robinson & McCamey,* for
appellee.

OPINION BY STADTFELD, J., July 18, 1935:

A little before 1:00 P. M. on June 18, 1929, a taxi-
cab of defendant company proceeding eastwardly in
Spring Way, Pittsburgh, Pa., struck and injured the
seven year old son of the plaintiffs and so injured him
that he died within less than an hour.

Spring Way is a narrow thoroughfare twenty feet in
width. There is no sidewalk along the southerly side
thereof and the sidewalk on the northerly side thereof
was three feet, three inches wide, leaving a cartway
less than seventeen feet in width. The portion of said
cartway over which travel might be had was further
limited by the presence of poles set along the southerly
side of Spring Way leaving a clearance between the
poles on the southerly side and the curb on the north-
erly side of fourteen feet, six inches. At the time of
this accident structural work was in progress on a
building on the southerly side of Spring Way and a

large pile of rubbish and debris was piled on the surface of the alley so that the only portion of the surface of the alley on which vehicles could travel was the northerly half thereof. There were also a number of automobiles parked along the southerly side of the alley west of the pile of rubbish so that there was room at the time of the accident for only one vehicle to pass along the way. The home of the plaintiffs was on the northerly side of Spring Way immediately opposite the point where the new construction work was in progress. At this point there was a group of three dwellings from each of which steps descended from the first floor to the sidewalk, which said steps occupied the whole of the width of the sidewalk. Between two of these houses was a narrow alleyway about three feet wide leading from Spring Way to the rear of the dwellings. It was the claim of the plaintiffs that their son with two other children, was moving westwardly along Spring Way toward Twenty-fifth Street on the sidewalk in front of the home of the plaintiffs; that as the children arrived at the steps in front of one of these houses the minor son of plaintiffs stepped down into the cartway to go around the steps and was then struck by the east bound taxicab of defendant which plaintiffs' witness on this trial testified was running at fifty miles per hour but stopped within two car lengths after striking the child. The evidence of the defendant was that as the cab was proceeding eastwardly at a rate of from twelve to fifteen miles per hour, over the Belgian block surface of the alley, and just as it came to the narrow alleyway leading from Spring Way to the rear of the plaintiffs' dwelling, the minor child of the plaintiffs ran out from said alleyway directly into the path of said cab which struck the child immediately upon his reaching the cartway.

The case was tried in May, 1931, and a verdict rendered for $4,090.50 was set aside and new trial granted; and in September, 1932, was again on trial and

verdict rendered for $500, and from the judgment entered upon this verdict, plaintiffs appeal, after new trial refused to them.

There are twenty-one assignments of error, but only two questions are raised: First, whether or not the lower court properly permitted cross-examination of Carmine Foglia, of plaintiffs, concerning his testimony on the former trial; and second, whether or not the court erred in his charge in various respects. The assignments relating to the admission of evidence are the second and seventh assignments.

At the first trial the plaintiff, Carmine Foglia, father of Antonio Foglia, the deceased child, though himself a laborer and of a modest station in life, outlined on cross-examination his plan to educate his deceased son for a profession. This precluded any claim for damages for earnings, and the court therefore set aside the verdict of $4,090.50. On the second trial the father testified that the deceased son was to go to work after sixteen as a laborer following his father's footsteps, that it cost $2.25 to $2.30 per week to maintain the boy; that he was healthy and bright and that as a laborer the witness earned $5.25 to $5.50 a day.

The defendant was then permitted, over the objection of plaintiff, to introduce the testimony of Foglia in the first trial. Appellant claims that this prejudiced his case and resulted in what he claims to be an inadequate verdict. Having testified on the former trial in a way so violently in conflict with his testimony on the second trial, it was certainly competent to confront him with this testimony, both that his credibility might be affected, and also in an endeavor to ascertain the actual fact as to the possible future of the minor son who had been injured.

The tenth, eleventh and twelfth assignments of error all relate to the amount of damages to which plaintiff

might be entitled. In view of the testimony embraced in the second and seventh assignments of error, and the contradictions referred to, it was entirely proper for the trial judge to caution the jury concerning a finding based on testimony bearing upon possible loss of earnings. The court instructed the jury that if it found a verdict for plaintiffs, they would be entitled to the reasonable expenses occurring on account of the child's death; the court then discussed the right of plaintiffs to recover for loss of earnings, pointing out that the parents were entitled to the wages but were bound to support the minor, and that they probably hope to receive wages when the child was sixteen years of age or even at an earlier age, and that they would be entitled to such wages until the child arrived at the age of twenty-one years. Since the child was only seven years old at the time of his death, it could not reasonably be expected that any wages would be earned or received by the parents until the child arrived at the age of sixteen years, and therefore the jury was instructed that it was necessary that this fact be kept in mind when arriving at the present worth of any loss of earnings the parents would sustain in the future by reason of the loss of this child.

The only evidence of expenses incurred was the undertaker's bill amounting to $265.50. Considering the extreme youth of the child at the time of the accident, the expense of maintenance and all the surrounding circumstances, we cannot, as a matter of law, say that the verdict was inadequate.

The first assignment of error relates to "refusing to grant a new trial" and the twenty-first that "the entire charge of the Court was error." These require no special comment as they wholly fail to comply with the rules of our Court. The ninth assignment of error relates to the refusal of plaintiffs' fourth point which was fully covered in the general charge. The remain-

ing assignments of error relate to alleged error in the charge of the Court, in failing to define or charge on negligence and contributory negligence; the alleged omission of adequate instructions on the tests of credibility and certain prejudicial remarks. If appellant considered the charge inadequate in any respect, he should have asked for additional instructions. The Court, in part, instructed the jury: "If you find from the fair weight of the evidence that the plaintiffs' claim is true that the driver of this cab went through there at a high and negligent rate of speed so that he was not able to control his car, and that he saw or should have seen these children, or I should say this boy, and saw or could have seen that boy was getting into or about or would get into the street in front of him and that he was going at such rate of speed that he could not stop, you would be justified in finding that that was negligence and awarding a verdict for the plaintiffs." This was a fair and concise presentation of the facts on which the right to recovery depended. The alleged prejudicial remarks in the court's charge were provoked and justified by the improper remarks of appellants' counsel in his argument to the jury, which would have justified the withdrawal of a juror and a continuance. Taking the charge as a whole, we consider it fair and unobjectionable.

The assignments of error are overruled and judgment affirmed